UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAMANTHA D.,

                        Plaintiff,

v.                                                3:18-CV-1280 (ATB)

COMM'R OF SOC. SEC.,

                        Defendant.
_____

APPEARANCES:                          OF COUNSEL:

LACHMAN & GORTON                      PETER A. GORTON, ESQ.
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.           PETER W. JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278


ANDREW T. BAXTER, United States Magistrate Judge


**<u>DECISION and ORDER</u>**

       Currently before the Court, is this Social Security action filed by Samantha D.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  This matter was referred to me, for all

proceedings and entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule

73.1, and the consent of the parties.  (Dkt. Nos. 4, 6)  The parties have each filed briefs (Dkt.

Nos. 9 and 10) addressing the administrative record of the proceedings before the Commissioner.

(Dkt. No. 8.)[1]

## I.    RELEVANT BACKGROUND

### A.    Procedural History

Plaintiff applied for disability insurance benefits as well as Supplemental Security

Income on June 4, 2015, alleging disability beginning January 29, 2012.  She subsequently

amended her alleged onset date to August 13, 2015.  (T. 10, 33-34.)  Plaintiff's applications were

initially denied on August 13, 2015, after which she timely requested a hearing before an

Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Shawn Bozarth,

on August 29, 2017, with a vocational expert also testifying.  (T. 28-53.)  On October 4, 2017,

the ALJ issued a written decision finding that Plaintiff was not disabled under the Social

Security Act.  (T. 7-21.)  On September 10, 2018, the Appeals Council denied Plaintiff's request

for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### B.    Factual Background

Plaintiff was born in 1976, making her 39 years old on the amended alleged onset date

and 41 years old on the date of the ALJ's decision.  Plaintiff earned an associate's degree in

Human Sciences and previously worked as a tax preparer and gas station cashier.  At the initial

level, Plaintiff alleged disability due to posttraumatic stress disorder, anxiety, and depression.

Plaintiff was hospitalized in a psychiatric unit for approximately two weeks in March 2016,

---

[1] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing
system.

following her mother's death, and sought emergency room treatment in April 2016 due to depressed mood and suicidal thoughts.  (T. 15-16, 39-40, 294-95, 302-07.)

## C.      The ALJ's Decision

In his decision (T. 12-18), the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2019.  (T. 12.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 13, 2015, the alleged onset date.  (*Id*.)  The ALJ concluded that Plaintiff had severe impairments including adjustment disorder with depression and anxiety, posttraumatic stress disorder ("PTSD"), anxiety disorder, and panic disorder with agoraphobia.  (*Id*.)  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 13-14.)  Specifically, the ALJ considered Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).  (*Id*.)

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with non-exertional limitations including "a low stress job, which is a job that requires only occasional decision making, occasional changes of workplace routine, and occasional judgments" and "jobs that require goal oriented work, which would not include work in a production-based environment such as an assembly line."  (T. 14.)  The ALJ determined, based on testimony provided by a vocational expert, that Plaintiff was capable of performing past relevant work as a cashier.  (T. 17-18.)  The ALJ also found that Plaintiff could make a successful adjustment to other work existing in significant numbers in the national economy.  (T. 18.)  The ALJ therefore concluded that Plaintiff was not disabled.  (*Id*.)

**D.     Issues in Contention**

In her brief, Plaintiff argues that the ALJ improperly weighed the medical evidence by, inter alia, substituting his lay judgment for undisputed medical opinions that Plaintiff had limitations in maintaining work pace, and failing to consider the opinion of treating physician Varsha Kishore, D.O., which was submitted after the hearing but before the ALJ rendered his decision.  (Dkt. No. 9, at 9-20.)  Plaintiff also maintains that the ALJ improperly failed to account for her need for special supervision or to consider a closed period of benefits.  (*Id*. at 20-21.)  Finally, Plaintiff argues that the ALJ's determination she could perform her past relevant work and other occupations was tainted by error and was not supported by substantial evidence. (*Id*. at 22-23.)

In his brief, Defendant argues that the ALJ accounted for Plaintiff's limitations in work pace in the RFC finding and properly considered the opinion evidence.  (Dkt. No. 10, at 5-10.) Defendant acknowledges that the ALJ did not expressly weigh Dr. Kishore's opinion, but contends that this does not require remand.  (*Id*. at 10.)  Defendant also maintains that Plaintiff should be precluded from raising the issue of a closed period of disability because she did not raise this argument before the ALJ or the Appeals Council.  (*Id*. at. 11.)  Defendant contends that the ALJ properly considered all of the evidence and reasonably concluded that Plaintiff was not disabled at any time during the relevant period.  (*Id*. at 11-13.)  Finally, Defendant argues that the ALJ was entitled to rely on the vocational expert's testimony because the hypothetical question posed reflected all of the limitations in the RFC, which were supported by substantial evidence.  (*Id*. at 13.)

On reply, Plaintiff rejects the Defendant's arguments that the ALJ did not have to consider whether Plaintiff could work consistently and that this Court need not consider whether

Plaintiff could remain on task. (Dkt. No. 13, at 1-2.) Plaintiff further argues that the opinion from non-examining consultant E. Kamin, Ph.D., does not constitute substantial evidence for the ALJ's RFC determination. (*Id*. at 2-3.) Finally, Plaintiff maintains that she satisfied her burden to demonstrate her RFC was more limited than found by the ALJ. (*Id*. at 4.)

The Court concludes that the Commissioner erred in not addressing the new and material treating source opinion of Dr. Kishore pursuant to the appropriate standards. That error was not harmless and requires remand.

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears

the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. THE COMMISSIONER'S FAILURE TO ADDRESS DR. KISHORE'S TREATING SOURCE OPINION

### A. Applicable Law

#### 1. The Five-Day Rule

In December 2016, the Social Security Administration ("SSA") adopted the requirement that a claimant must submit or inform SSA about additional written evidence at least five business days before the date of his or her scheduled hearing. 20 C.F.R. §§ 404.935(a), 416.1435(a); Social Security Ruling ("SSR") 17-4p, 2017 WL 4736894, at \*2 (Oct. 4, 2017). "If a party fails to comply with this requirement to submit all written evidence at least five days before the hearing, 'the administrative law judge may decline to consider or obtain the evidence' unless" one of the exceptions in subsection (b) applies. *Shari Lee Z. v. Saul*, 19-CV-0265 (GTS), 2019 WL 6840134 at \*6 (N.D.N.Y. Dec. 16, 2019). One listed exception is that "[s]ome . . . unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence sooner." 20 C.F.R. §§ 404.935(b)(3), 416.1435(b)(3). This section of the regulation then provides several examples, including, but not limited to, the circumstance that the claimant "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." 20 C.F.R. §§ 404.935(b)(3)(iv), 416.1435(b)(3)(iv). The five-day rule was applicable at the time of the ALJ's October 2017 decision in this case.

## 2. Evidence Before the Appeals Council

Other amended regulations applicable to this case describe the circumstances under which

the Appeals Council is required to consider new evidence submitted by a claimant following an

ALJ's decision:

> The Appeals Council will review a case if . . . Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Paragraph (b) states: "[T]he Appeals Council will

only consider additional evidence . . . if you show good cause for not informing us about or

submitting the evidence[,]" at least five business days before the date of the claimant's scheduled

hearing, for particular enumerated reasons. 20 C.F.R. §§ 404.970(b), 416.1470(b). The good

cause exceptions are defined in the same terms as those for submission of additional evidence to

an ALJ, including the example quoted above. 20 C.F.R. §§ 404.970(b)(3)(iv), 16.1470(b)(3)(iv).

If the Appeals Council does not find that the claimant had good cause for missing the deadline to

submit evidence, the Appeals Council will send the claimant "a notice that explains why it did

not accept the additional evidence . . . ." 20 C.F.R. §§ 404.970(c), 416.1470(c).

"New" evidence is "any evidence that has not been considered previously during the

administrative process[,]" that is not cumulative. *McIntire v. Astrue*, 809 F. Supp. 2d 13, 21 (D.

Conn. 2010). "Evidence is material if it is (i) relevant to the time period for which benefits have

been denied and (ii) probative, meaning it provides a reasonable probability that the new

evidence would have influenced the Commissioner to decide the claimant's application

differently." *Id*.

New and material evidence submitted to the Appeals Council following the ALJ's

decision, upon a showing of good cause consistent with the amended regulations, becomes part

of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). The role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision. *Sears v. Colvin*, 8:12-CV-570 (MAD/ATB), 2013 WL 6506496, at *5 (N.D.N.Y. Dec. 12, 2013) (citing *Woodford v. Apfel*, 93 F. Supp. 2d 521, 528 (S.D.N.Y. 2000)). If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." *Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) (citation omitted). Remand may be appropriate where the Appeals Council fails to discuss a newly submitted treating physician's opinion or "fails to provide the type of explanation required by the treating physician rule when denying Plaintiff's request for review." *See, e.g., Djuzo v. Colvin*, No. 5:13-CV-0272, 2014 WL 5823104, at *4-5 (N.D.N.Y. Nov. 7, 2014); *Sears v. Colvin*, 2013 WL 6506496, at *6; *Davidson v. Colvin*, 1:12-CV-0316, 2013 WL 5278670, at *7-8 (N.D.N.Y. Sept. 18, 2013).

### 3. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued

opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

### 4. Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess*, 537 F.3d 117, 131 (2d Cir. 2008)). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye*

*ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Miller v. Comm'r of Soc. Sec.*, 1:13-CV-1388 GLS, 2015 WL 1383816, at *8 (N.D.N.Y. Mar. 25, 2015) (both consultative examiner and non-examining physician were recognized experts in evaluation of medical issues in disability claims; [a]ccordingly, their opinions can be given weight, even greater weight than opinions of treating physicians, when, as here, they are supported by substantial evidence); *Little v. Colvin*, 5:14-CV-63 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015).

### A. Relevant Medical Evidence

#### 1. Consultative Opinions

On July 23, 2015, Mary Ann Moore, Psy. D., conducted a consultative psychiatric evaluation of Plaintiff. (T. 269-73.) Plaintiff reported that she felt that she would not be able to work due to depression, anxiety, social anxiety, and PTSD, as well as medical issues. (T. 269.) She had been seeing a psychiatrist who prescribed medications, which Plaintiff thought were helping, but she stopped receiving psychiatric treatment after the mental health agency closed and her doctor retired. Plaintiff was seeing a counselor on a weekly basis. (*Id.*)

Plaintiff reported having feelings of depression since the age of nine following sexual abuse as a child, and panic attacks. (T. 270.) She stated that her symptoms included difficulty sleeping, nightmares, a loss of appetite, crying spells, hypervigilance, intrusive and racing thoughts, irritability, loss of energy, and excessive worrying. Plaintiff interacted with family and a few friends, but could be withdrawn from others and had trust difficulties. (T. 270, 272.) Her panic attacks were accompanied by palpitations, sweating, breathing difficulty, trembling, and

chest pains and occurred almost daily since stopping her medications.  (*Id*.)  She was fired from her last job, after three weeks, following a panic attack.  (T. 269.)

Dr. Moore found that Plaintiff's manner of relating socially was adequate; her affect anxious; her mood nervous; her attention, concentration, and recent and remote memory skills were impaired; her insight fair; and her judgment fair with depression and anxiety.  (T. 271.)  Dr. Moore concluded that Plaintiff had no limitation with respect to following and understanding simple directions and instructions or performing simple tasks independently.  She had moderate limitations with respect to maintaining attention and concentration or learning new tasks.  Dr. Moore opined that Plaintiff had moderate to marked limitations with respect to appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule.  (T. 272.)  Dr. Moore concluded that the results of her examination appeared to be consistent with psychiatric issues which could significantly interfere with the Plaintiff's ability to function on a daily basis.  The consulting psychiatrist diagnosed Plaintiff with, inter alia, PTSD, social anxiety, and panic disorder with possible beginnings of agoraphobia.  (*Id*.)  Dr. Moore found that Plaintiff's prognosis was fair to guarded.

On August 12, 2015, E. Kamin, Ph. D., prepared a mental RFC assessment of Plaintiff based on available mental health treatment records, but without examining Plaintiff.  (T. 54-61.)  Dr. Kamin found that Plaintiff had mild restrictions of activities of daily living, noting that she was able to maintain her home and care for her children; mild difficulties maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  (T. 58.)  The state agency psychologist opined that Plaintiff was not significantly limited in the ability to carry out very short and simple instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability

to work in coordination with or in proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to respond appropriately to changes in the work setting; and the ability to travel in unfamiliar places or use public transportation. (T. 60-61). Plaintiff had moderate limitations in the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to set realistic goals or make plans independently of others. (*Id*.)

Dr. Kamin's report stated that "Dr. Moore's MSO [Medical Source Opinion] of claimant being limited to entry level work is in keeping with findings and RFC." (T. 59.) However, Dr. Moore's report does not include an opinion that Plaintiff could perform entry level work and Dr. Kamin did not provide any explanation for why he did not adopt Dr. Moore's finding that Plaintiff had **moderate to marked** limitations in several critical areas--appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule. Dr. Kamin's finding also appeared to reflect some internal inconsistencies. For example, he found that Plaintiff had no significant limitations with respect to the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, but moderate limitations with respect to the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

The ALJ afforded weight to Dr. Kamin's opinions, although he afforded it less weight because it failed to specify the skill level, associated stress, and production pace that would

apply to the "entry level work" that Dr. Kamin found Plaintiff could perform. (T. 16.) The ALJ gave some weight to Dr. Moore's opinions that Plaintiff had certain moderate limitations, but discounted her findings that Plaintiff had several moderate to marked limitations, including with respect to relating adequately with others, based on evidence that Plaintiff talked with her mother and a friend on a regular basis and interacted with two or three other people as well. (*Id.*)

### 2. Treating Source Opinions

The record contains a medical source statement from Dr. Varsha Kishore dated September 20, 2017 at Exhibit 13E. (T. 265-68.) This opinion was submitted to the SSA by Plaintiff's counsel on September 26, 2017, prior to the ALJ's October 4, 2017, decision, but almost a month after the administrative hearing on August 29, 2017. (T. 7-53.) Dr. Kishore was one of Plaintiff's primary care providers since at least July 2016. (T. 323-26.)[2]

Dr. Kishore listed diagnoses for Plaintiff including depression and generalized anxiety disorder. (T. 268.) She opined that Plaintiff had "more than slight" limitations with respect to maintaining attention and concentration and her ability to interact with the general public supervisors and co-workers. (T. 267.) Plaintiff was found to have medium limitations with respect to performing activities within a schedule, maintaining regular attendance and/or be punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to ordinary stressors in a work setting with simple tasks. (*Id.*) Dr. Kishore found that Plaintiff would be off task for more than 10% but less than 15% of a normal workday and would miss one day per

[2] The Family & Children's Society had been Plaintiff's primary mental health care provider from July 2015 until she was discharged by the practice in early August 2017, which resulted in the discontinuation of Plaintiff's medications. (T. 37, 40-44, 335-36.)

month due to mental impairments or side effects of medications. (T. 268.) As discussed further below neither the ALJ nor the Appeals Council acknowledged or addressed Dr. Kishore's medical source statement.

### A. Analysis

#### 1. The Failure to Consider the Treating Source Opinion

The treating physician medical source statement from Dr. Kishore was not mentioned and apparently was not considered by the ALJ or the Appeals Counsel even though it was received by the SSA one week before the ALJ filed his decision and almost one year before the Appeals Council denied review. While Dr. Kishore's statement was submitted after the deadline imposed by the applicable regulations, neither the ALJ nor the Appeals Council addressed whether Plaintiff had good cause for the tardy submission. Plaintiff argues that the ALJ's failure to discuss or consider this treating source opinion requires remand. (Dkt. No. 9, at 19-20.) Defendant argues that any error in the Commissioner's failure to expressly weigh Dr. Kishore's opinion was harmless because the ALJ need not recite every piece of evidence, and because there is no need for remand where an error would not change the ultimate disability determination. (Dkt. No. 10, at 10.) (Defense counsel did not argue in this action that Dr. Kishoe's medical source statement could be ignored based on the five-day rule.) The Court concludes that Commissioner's failure to address, in any fashion, the new, material information from the only treating physician to submit a medical source statement, was error which requires remand.

Dr. Kishore's medical source statement was received by the SSA on September 26, 2017 and is included in the administrative record as Exhibit 13E. (T. 265-68.) The ALJ did not mention this treating source opinion in his October 4, 2017 decision, and did not include Exhibit

13E in the List of Exhibits he considered.  (T. 21).  Nor did the ALJ make any ruling with respect to whether the Plaintiff had good cause for failing to submit the statement at least five business days before the administrative hearing.[3]

In denying Plaintiff's request for review on September 10, 2018, the Appeals Council did not mention Dr. Kishoe's medical source statement, and did not reference Exhibit 13E on the list of exhibits it considered.  (T. 1-4.)  The Appeals Council did consider an Exhibit 11B, which was the request of Plaintiff's attorney for review of the ALJ's decision.  (T. 147.)  Without mentioning Dr. Kishoe by name, counsel argued that the ALJ failed "to properly consider treating source opinions of record" (T. 147), and Dr. Kishoe was the only treating physician who submitted a medical source statement.  The Appeals Council did not send Plaintiff "a notice that

---

[3] The Plaintiff and her counsel received a Notice of Hearing dated June 1, 2017, which stated:

> If you are aware of or have more evidence, such as recent records, reports, or evaluations, you must inform me about it or give it to me no later than 5 business days before the date of your hearing. If you do not comply with this requirement, I may decline to consider the evidence unless the late submission falls within a limited exception.

(T. 110, 134, 136.)  At the August 29, 2017 administrative hearing, Plaintiff's attorney stated that he had timely requested an opinion from a treating doctor who was not able to comply with the request.  (T. 31-32.)  Plaintiff's counsel suggested that he still hoped to seek a medical opinion from Darlene Denzien, D.O., at Lourdes Center for Family Medicine, who he thought was still treating Plaintiff.  (T. 31.)  Plaintiff subsequently testified that she actually saw Dr. Kishore at Lourdes, rather than Dr. Denzien.  (T. 42.)  It does not appear the ALJ left the record open following the administrative hearing, and he suggested that if Plaintiff had not submitted a prior letter about additional evidence, the ALJ could not "really consider it."  However, the ALJ was made aware that Plaintiff's counsel had made an unsuccessful attempt to request a treating source opinion prior to the hearing and was still trying to obtain one.  (T. 31-32.)  And, the ALJ apparently did not consider whether any exception to the five-day rule might have applied to the treating source statement that was ultimately submitted, which statement did not exist until September 20th when Dr. Kishoe prepared it.  *See* 20 C.F.R. §§ 404.935(b)(3)(iv), 416.1435(b)(3)(iv) (exception to the five-day rule includes the circumstance where the claimant "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.").

explained why it did not accept the additional evidence" under 20 C.F.R. §§ 404.970(c) and 416.1470(c).

The SSA erred in failing to address the question of whether Plaintiff had good cause for the tardy submission of Dr. Kishoe's medical source statement, and it would be inappropriate for this Court to consider that factual issue as a matter of first impression on appeal. At a minimum, this case must be remanded for consideration of whether this treating source opinion should have been accepted for consideration by the Commissioner based on an exception to the five-day rule. The Court will also analyze whether, assuming the Commissioner should have accepted Dr. Kishoe's opinion, the ALJ and/or the Appeal Council otherwise erred in failing to weigh and consider that opinion on the merits.

Based on the authority cited above, the Commissioner clearly erred because both the ALJ and the Appeal Council failed to consider and weigh the opinion of Dr. Kishoe based on the standards applicable to treating physicians. Dr. Kishoe opined, that Plaintiff would be off task more than 10% but less than 15% in a normal workday. (T. 268.) None of the consultative medical source statements directly addressed the extent to which Plaintiff would be on or off task. The VE testified at the hearing that a worker who was off task more than 10% of the workday would not be able to sustain competitive employment in any occupation, including "low stress" jobs or "goal oriented" work. (T. 49-52.) Dr. Kishoe's opinion was not duplicative of other evidence in the record and was clearly material because she was the only treating physician to provide a medical source opinion and because she made specific findings inconsistent with the Commissioner's non-disability determination. *See, e.g., Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018) (doctors who have not treated or examined a patient are generally entitled to less deference; "the treatment provider's perspective

would seem all the more important in cases involving mental health, which are not susceptible to clear records such as x-rays or MRIs").

Given the gaps in the non-treating medical evidence upon which the ALJ relied, this Court cannot find that Dr. Kishoe's opinion was not material or that the Commissioner's failure to consider or weigh her opinion was harmless error. See, e.g., *Sears v. Colvin*, 2013 WL 6506496, at *5, 7 (a sentence four remand is warranted when the Commissioner failed to adequately address additional evidence that could potentially fill "significant gaps in the record . . . [and could] plainly help to assure the proper disposition of a claim") (citation omitted). Dr. Kishoe opinion that Plaintiff would be off task more than 10% of the workday was based, inter alia, on her finding that Plaintiff has a "medium" limitations on completing a normal work day without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 267-68.) Dr. Kishoe's opinion was consistent with the opinion of Dr. Moore who, after examining Plaintiff, concluded that she would have moderate to marked limitations in a number of relevant areas, including maintaining a regular work schedule. The ALJ discounted Dr. Moore's findings of Plaintiff's moderate to marked limitations by noting, by way of example, that Plaintiff interacted with her mother and several friends, an observation unrelated to Plaintiff's ability to maintain a regular work schedule. The ALJ assigned more weight to non-examining consultant Dr. Kamin, whose opinion that Plaintiff could perform entry level work was based on a misstatement about the findings of Dr. Moore. Dr. Kamin also found that Plaintiff had moderate limitations with respect to the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods; but Dr. Kamin did not explain how this limitation might translate into the extent to which Plaintiff would be off task during a normal workday.

Given the indefinite nature of the opinions of the consulting doctors, the Court concludes that there is a reasonable probability that the only treating medical source statement of record, which clearly opined that Plaintiff had at least one limitations inconsistent with maintaining competitive employment, would change the Commissioner's disability determination. Because this additional evidence could have affected the outcome of the Commissioner's decision, it was material, and the error of the ALJ and the Appeals Council in failing to weigh and consider this evidence is not harmless. *See, e.g., Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (because the court is not convinced that proper consideration of the physician's opinion would not change the outcome of the claim, it cannot find that ALJ's error harmless).

The appropriate weight to accord the treating opinion of Dr. Kishoe should be determined by the Commissioner in the first instance, and the Court should refrain from 'affirm[ing] an administrative action on grounds different from those considered by the agency.'" *Lesterhuis v. Colvin*, 805 F.3d at 88 (quoting *Burgess*, 537 F.3d at 128). Because the Commissioner did not consider or weigh the only treating source opinion of record, the Court cannot determine whether the Commissioner's ultimate non-disability determination is supported by substantial evidence. Accordingly, this case must be remanded for full consideration of the medical opinion evidence, assuming the Commissioner determines that the belatedly submitted medical source statement should be accepted under the regulations establishing the five-day rule and its exceptions.

### 2. Nature of Remand

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally

appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This Court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

As noted, on remand, the Commissioner must determine whether Dr. Kishoe's tardy medical source statement should be accepted for consideration under the regulatory exceptions to the five-day rule. If that opinion evidence should have been accepted, it should be considered and weighed pursuant to the standards applicable to treating physicians, along with the other medical evidence.

Having found that remand is necessary to address Dr. Kishoe's opinion, the Court has not resolved Plaintiff's arguments that the ALJ erred in other respects. On remand, whether or not Dr. Kishoe's medical source statement is accepted as part of the record, the Commissioner should consider whether additional medical opinion evidence is necessary to address possible gaps in the record, to assess Plaintiff's RFC, and to determine whether she can perform competitive work in the national economy. To the extent the evidence indicates that Plaintiff's mental health condition improved substantially at some point in time, the Commissioner, on remand, should consider whether Plaintiff was disabled for some prior, closed period of twelve months or more.[4]

**ACCORDINGLY**, it is

---

[4] *See Robertson v. Berryhill*, 6:16-CV-06481, 2017 WL 3574626, at *2 (W.D.N.Y. Aug. 18, 2017) ("When considering a claim for benefits, 'if a claimant is disabled at any point in time, the ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period of not less than 12 months, following the date of his claim.'") (quoting *Williams v. Colvin*, 15-CV-144S, 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016)).

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case

**REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings,

consistent with this Decision.

Dated: March 11, 2020
      Syracuse, New York

Andrew T. Baxter
U.S. Magistrate Judge